MARY v LEWIS

Docket No. 56536. Argued April 5, 1976 (Calendar No. 2).—Decided
December 31, 1976.

Ernest L. Mary brought an action against Robert J. Lewis,
principal defendant, for enforcement of a promissory note, and
served a writ of garnishment upon Peoples State Bank, gar-
nishee defendant, which filed a disclosure denying any indeb-
tedness to the principal defendant. In response to interrogato-
ries the garnishee defendant later stated that it had made a
commercial loan to the principal defendant which was secured
by an assignment of certain notes receivable under a security
agreement. The Ingham Circuit Court, James T. Kallman, J.,
granted the plaintiff a default judgment against the principal
defendant. A receiver was appointed for the principal defend-
ant in another action in circuit court; the garnishee defendant
bank voluntarily turned over to the receiver the notes receiva-
ble held as security for the commercial loan, and the notes
were sold by the receiver. The judgment against the principal
defendant was entered within four months preceding his adju-
dication as a bankrupt in Federal district court, but the writ of
garnishment had been served on the bank more than four
months before the adjudication of bankruptcy. The trial court
granted the garnishee defendant a judgment finding that it was
not liable to the plaintiff for the notes receivable. The Court of
Appeals, Quinn, P. J., and McGregor and O'Hara, JJ., reversed
(Docket No. 18607). The Supreme Court reversed and remanded

REFERENCES FOR POINTS IN HEADNOTES
[1] 6 Am Jur 2d, Attachment and Garnishment § 347.
[2] 6 Am Jur 2d, Attachment and Garnishment § 352.
[3] 6 Am Jur 2d, Attachment and Garnishment § 455.
[4] 73 Am Jur 2d, Statutes § 347.
[5] 73 Am Jur 2d, Statutes § 352.
[6] 73 Am Jur 2d, Statutes § 355.
[7] 16 Am Jur 2d, Constitutional Law § 119.
[8] 16 Am Jur 2d, Constitutional Law § 335.
[9] 6 Am Jur 2d, Attachment and Garnishment § 395 *et seq.*
[10] 6 Am Jur 2d, Attachment and Garnishment § 280.
[11] 6 Am Jur 2d, Attachment and Garnishment § 499.

for dismissal of the prejudgment garnishment action in a memorandum opinion filed July 23, 1975, but that judgment was vacated on rehearing and the garnishee defendant was granted leave to appeal, 394 Mich 443; 231 NW2d 648 (1975). *Held:*

1. A garnishee defendant must disclose any liability to the principal defendant, subject to certain exceptions not applicable here, and the true condition of its liability to the principal defendant. Disclosure to the plaintiff of the amount of the debt secured by the notes and where he could obtain information as to the total value of the notes did not meet the requirements of the court rule.

2. The garnishment lien attached on the date of service of the writ of garnishment more than four months preceding bankruptcy, not on the date of judgment. It was, therefore, unaffected by the subsequent bankruptcy proceedings.

3. The amendatory statute which limits the use of prejudgment garnishment to situations where the principal defendant is not subject to the jurisdiction of this state or cannot be served with process after a diligent effort has been made did not nullify this prejudgment garnishment where both the writ and the judgment against the principal defendant were issued six years prior to the effective date of the statute, and were not challenged by the principal defendant, the party whose rights the statute was designed to protect. The language in the amendatory statute that it shall apply to actions pending or commenced on or after its effective date was intended only to bar the issuance of writs of garnishment before judgment after its effective date, not to invalidate all judgments obtained subsequent to a prejudgment garnishment.

4. The bank has not shown that it has standing to raise the question of the constitutional rights of the principal defendant regarding the prejudgment garnishment. The issuance of the writ prior to judgment was not, in itself, the direct cause of substantial economic injury to the bank, and there has been no showing that the principal defendant could not have effectively asserted his own due-process rights.

Affirmed.

Justice Levin concurred, but for the reason that this litigation is not an "action pending" within the meaning of the 1974 amendment to the Revised Judicature Act which eliminated prejudgment garnishment except to secure jurisdiction. The majority opinion in this case, holding that the amendment bars only the issuance of prejudgment writs of garnishment after its effective date, limits retroactivity to the atypical case where the

action was commenced before, but the writ issued after, the effective date, and in practical effect makes the amendment apply only to cases commenced after its effective date. The apparent purpose of the legislation was to relieve principal defendants of the burden of having funds frozen during prolonged civil litigation, and the new policy was made applicable to "actions pending", thereby making the amendment retroactive. The apparent purpose of retroactivity was to require the release of funds garnished before the effective date, and it is not consistent with that purpose to deny the benefit of retroactivity to principal defendants in the typical case where the writ of garnishment was issued before the effective date. The retroactivity provision of the amendatory act is concerned with garnishment as it affects principal defendants, and the extent of the retroactivity can properly be limited on that basis. In this case the funds had been turned over to the principal defendant's receiver before the enactment of the amendment, and were not released by the bank to the principal defendant in reliance on the legislative directive. Retroactive application of the amendment in this case would not tend to benefit the principal defendant or a person claiming in respect to him, and would thus be beyond the remedial purpose of the amendment.

57 Mich App 14; 225 NW2d 206 (1974) affirmed.

OPINION OF THE COURT

1. GARNISHMENT—DISCLOSURE—SUFFICIENCY.

A garnishee defendant must disclose any liability to the principal defendant, subject to certain exceptions, and the true condition of its liability to the principal defendant (GCR 1963, 738.5, 738.6).

2. GARNISHMENT—DISCLOSURE—VALUE OF ASSETS.

Disclosure by a garnishee defendant that it held as security notes receivable belonging to the principal defendant, without disclosing the total face value of the notes, was not sufficient to inform the plaintiff whether the secured indebtedness was greater or less than the security (GCR 1963, 738.5, 738.6).

3. GARNISHMENT—LIENS—ATTACHMENT—PREJUDGMENT GARNISHMENT.

A lien arising from service of a writ of garnishment attaches upon service of the writ; in the case of a prejudgment garnishment, the entry of a judgment for the plaintiff perfects the lien acquired upon service of the writ of garnishment by establishing the amount for which the garnishee may be held liable.

4. STATUTES—RETROSPECTIVE APPLICATION—PROPERTY RIGHTS.

Statutes affecting property rights are presumed not to operate retrospectively unless the Legislature clearly and unequivocally indicates otherwise.

5. GARNISHMENT—STATUTES—RETROSPECTIVE APPLICATION.

The language in the amendatory statute limiting the issuance of garnishment before judgment that it shall apply to actions pending or commenced on or after its effective date was intended only to bar the issuance of writs of garnishment before judgment after its effective date, not to invalidate all judgments obtained subsequent to a prejudgment garnishment (1974 PA 371; MCL 600.4011; MSA 27A.4011).

6. GARNISHMENT—STATUTES—PREJUDGMENT GARNISHMENT—EFFECTIVE DATE.

The amendatory statute which limits the use of prejudgment garnishment to situations where the principal defendant is not subject to the jurisdiction of this state or cannot be served with process after a diligent effort has been made did not nullify a garnishment before judgment where both the writ of garnishment and the judgment against the principal defendant were issued six years prior to the effective date of the statute and were not challenged by the principal defendant, the party whose due-process rights the statute was designed to protect (MCL 600.4011; MSA 27A.4011).

7. CONSTITUTIONAL LAW—STANDING—CONSTITUTIONAL RIGHTS OF ANOTHER.

One party may not raise the denial of another person's constitutional rights except where there is evidence that the direct consequence of the denial would impose substantial economic injury upon the party asserting the right, or interests of the litigant and the other person intertwine and the latter's rights may not be effectively vindicated in any other manner because they are capable of evading constitutional review.

8. CONSTITUTIONAL LAW—GARNISHMENT—DUE PROCESS—STANDING.

A garnishee defendant does not have standing to raise the question of the constitutionality of a prejudgment garnishment as on the basis that the writ of garnishment violates the due process rights of the principal defendant where the fact that the writ issued prior to judgment against the principal defendant was, in itself, not the direct cause of a substantial economic injury to the garnishee defendant, and there was no showing

that the principal defendant could not have effectively asserted his own due process rights.

Concurring Opinion

Levin, J.

9. Garnishment—Prejudgment Garnishment—Jurisdiction.

*Prejudgment garnishment is now available only to secure jurisdiction of a principal defendant; an amendment to the Revised Judicature Act eliminates prejudgment garnishment to secure payment of a judgment that might be obtained (MCL 600.4011; MSA 27A.4011, as amended by 1974 PA 371).*

10. Garnishment—Prejudgment Garnishment—Statutes—Retroactivity.

*The apparent purpose in making the amendatory statute which eliminated prejudgment garnishment, except to secure jurisdiction, applicable to actions pending on its effective date was to require the release of funds garnished before the effective date, and it is not consistent with that purpose to deny the benefits of retroactivity to principal defendants in the typical case where the action was commenced and the writ of garnishment issued before the effective date, while allowing retroactivity in the atypical case where the action was commenced before but the writ issued after the effective date by construing the statute only to prohibit the issuance of prejudgment writs of garnishment after its effective date (MCL 600.4011; MSA 27A.4011, as amended by 1974 PA 371).*

11. Garnishment—Prejudgment Garnishment—Action Pending—Words and Phrases—Statutes—Retroactive Application.

*An action is not an "action pending" within the meaning of the amendment to the Revised Judicature Act which eliminated prejudgment garnishment except to secure jurisdiction where the funds garnished had been turned over to the principal defendant's receiver before the enactment of the amendment, and were not released to the principal defendant in reliance on the legislative directive; the apparent purpose of the retroactivity provision in the amendment was to require the release of funds garnished before the effective date for the relief of principal defendants, and retroactive application of the amendment in this case would not tend to benefit the principal defendant or a person claiming in respect to him, and would thus be beyond the remedial purpose of the amendment (MCL 600.4011; MSA 27A.4011, as amended by 1974 PA 371).*

*MacLean, Seaman, Laing & Guilford* (by *Terry R. Black)* for plaintiff.

*Robert M. Platt* for garnishee-defendant Peoples State Bank.

RYAN, J. This case is before us on rehearing granted. The following chronology and history of the litigation is adopted from the Court of Appeals opinion.[1]

"1. October 16, 1968, plaintiff filed suit against Robert J. Lewis, the principal defendant in this matter, and served a writ of garnishment upon defendant.

"2. October 18, 1968, defendant filed a disclosure which denied liability to the principal defendant.

"3. October 23, 1968, plaintiff served interrogatories on defendant.

"4. October 31, 1968, defendant answered the interrogatories disclosing that on October 25, 1968, instead of October 16, 1968, the bank held the following property of the principal defendant: $159.84 in a checking account, $17.21 in a joint saving account, and notes receivable securing a commercial loan with a balance of $7,281.56. Defendant's answer relating to the loan was stated as follows: 'This loan is secured by an assignment of notes receivable and security agreement. Financing statement filed December 8, 1967.'

"5. February 10, 1969, a default judgment in plaintiff's favor was entered against the principal defendant.

"6. On or about February 14, 1969, a state receiver was appointed pursuant to an order of the circuit court for the principal defendant herein in the case of *Ormal K. Lewis vs Robert J. Lewis,* file no. 815-C.

"7. On or about March 25, 1969, defendant voluntarily turned over to the state receiver, without court order and without notice to plaintiff, the notes receivable belonging to the principal defendant and held as security for the commercial loan noted above, upon demand from the receiver.

---

[1] 57 Mich App 14, 15–17; 225 NW2d 206 (1974).

"8. April 4, 1969, the circuit court confirmed the sale by the receiver of the assets of the principal defendant, including the notes receivable turned over to the receiver by defendant.

"9. April 15, 1969, the principal defendant filed a voluntary bankruptcy petition and was adjudicated a bankrupt.

"10. On May 24, 1969, counsel for plaintiff wrote a letter to counsel for defendant stating that he had learned in bankruptcy court that defendant held notes receivable belonging to the principal defendant on the date the writ of garnishment was served in an amount in excess of $15,000, noting that he believed the bank would be liable under GCR 1963, 738 for the amount of plaintiff's judgment against the principal defendant.

"11. May 27, 1969, plaintiff filed a demand for pretrial conference on the liability of defendant together with proof of service.

"12. July 11, 1969, plaintiff served a second set of interrogatories upon defendant asking expressly, *inter alia,* about the notes receivable belonging to the principal defendant and held by defendant.

"13. December 15, 1969, defendant answered plaintiff's second set of interrogatories.

"14. March 18, 1970, a second demand for pretrial conference on the liability of defendant was made by plaintiff together with proof of service.

"15. July 16, 1970, the principal defendant in this matter was discharged in bankruptcy.

"16. The docket entries and pleadings reflect that plaintiff sought every few months since May 27, 1969 to bring the issue of defendant's liability to trial, the matter finally having been heard upon motion for summary judgment in August, 1973, with judgment for defendant entered on October 16, 1973."

The Court of Appeals reversed and imposed liability on the bank.[2] In a memorandum opinion filed July 23, 1975, we reversed and remanded to the trial court for dismissal of the prejudgment

[2] *Id.*

garnishment action. On application of the plaintiff, we granted rehearing.[3] We now affirm the Court of Appeals.

## I

The first issue to be considered is whether the disclosure on the part of the garnishee bank was insufficient in view of the language of GCR 1963, 738.6. That rule provides:

"Disclosure. The garnishee shall file with the clerk of court a disclosure under oath within 15 days after the date of the service of the writ upon him. The disclosure shall reveal any liability to the principal defendant as specified in subrule 738.5, and, except as to claims for unliquidated damages for wrongs or injuries, may claim any setoff of which the garnishee could have availed himself against the principal defendant if he had not been garnisheed. Unless the plaintiff takes further steps as authorized by these rules within 10 days after the receipt of notice of the filing of the garnishee's disclosure, the disclosure shall be held to be sufficient."

Rule 738.5 establishes the extent of a garnishee's potential liability to the plaintiff.[4] The effect of

[3] 394 Mich 443; 231 NW2d 648 (1975).

[4] GCR 1963, 738.5 provides:

".5 Liability of Garnishee. Subject to the provisions of the garnishment statute and any setoff permitted by these rules, the garnishee may be held liable to the plaintiff in the amount of any and all of the following, but in the case of garnishment before judgment, not in excess of 1-1/4 times the amount of the claim stated in the affidavit of garnishment and in the case of garnishment after judgment, not in excess of 1-1/4 times the amount of the judgment entered in favor of the plaintiff against the principal defendant:

"(1) All tangible or intangible property in his possession or control at the time of the service of the writ upon him belonging to the principal defendant, unless the property is represented by a negotiable document of title held by a bona fide purchaser for value other than the principal defendant.

"(2) All negotiable documents of title and all goods represented by negotiable documents of title belonging to the defendant when the

subrules .5 and .6 of Rule 738, when read together, is a requirement of extensive disclosure of a garnishee's liabilities to a principal defendant.

The disclosure filed by Peoples State Bank in this case denied liability to the principal defendant. Five days after the bank filed its disclosure the plaintiff, Ernest L. Mary, served interrogatories upon the bank, pursuant to GCR 1963, 738.9. In answer to the interrogatories, the bank stated that the principal defendant, Robert Lewis, doing business as Peoples Finance Company, had an outstanding loan of $7,281.56 secured by an assignment of notes receivable and a security agreement, noting that a financing statement was filed December 8, 1967. The bank admits that at the time of

documents of title are in the possession of the garnishee at the time of the service of the writ upon him.

"(3) All corporate share certificates in his possession or control at the time of the service of the writ upon him belonging to the principal defendant.

"(4) Except as to debts evidenced by negotiable instruments, all debts owing by the garnishee to the principal defendant at the time of the service of the writ upon the garnishee whether or not they are due.

"(5) All debts owing by the garnishee evidenced by negotiable instruments held or owned by the principal defendant at the time of the service of the writ of garnishment on the principal defendant, which instruments are by these rules brought before the court prior to their negotiation to a bona fide purchaser for value.

"(6) All judgments in favor of the principal defendant against the garnishee in force at the time of the service of the writ upon the garnishee.

"(7) All tangible or intangible property of the principal defendant which at the time of the service of the writ upon the garnishee, the garnishee holds by conveyance, transfer or title that is void as to creditors of the principal defendant whether or not the principal defendant could maintain an action therefor against the garnishee.

"(8) The value of all tangible or intangible property of the principal defendant which, prior to the time of the service of the writ upon the garnishee, the garnishee received or held by conveyance, transfer or title that was void as to creditors of the principal defendant whether or not the principal defendant could maintain an action therefor against the garnishee. Any contingent right on a claim against the garnishee in favor of the principal defendant at the time of the service of the writ upon the garnishee."

the service of the writ of garnishment it held notes receivable belonging to the principal defendant with a face value of over $20,000, and that these notes were subject to garnishment under GCR 1963, 738. The bank contends that it performed its disclosure responsibilities under the court rule by advising Mr. Mary where he could obtain additional information regarding the notes if he were interested. It is clear, however, that GCR 1963, 738.5 and 738.6, as read together, establish that a garnishee must disclose any liability to the principal defendant subject to certain exceptions not applicable here. Further, the garnishee must disclose the true condition of its liability to the principal defendant. *Hirth v Pfeifle,* 42 Mich 31; 3 NW 239 (1879). *Baios v Clark,* 304 Mich 159; 7 NW2d 255 (1943).

The bank's failure to disclose the total face value of the notes held as security meant that plaintiff was not informed whether the security held was greater or less than the secured indebtedness. Merely telling plaintiff *where* he could obtain information as to the notes held by defendant did not meet the requirements of the court rule. The duty is one of disclosure by the garnishee, not one of search and discovery by the plaintiff. The Court of Appeals decision that the bank's disclosure was insufficient was correct.

II

The second issue presented is whether the lien acquired by plaintiff on the principal defendant's notes receivable, held by the bank at the time of the service of writ of garnishment, was affected by the bankruptcy of the principal defendant. The judgment against the principal defendant was entered within four months preceding his bank-

ruptcy, though the writ of garnishment was served upon the bank more than four months before principal defendant's bankruptcy. Section 67a of the Bankruptcy Act, 11 USC 107(a), provides that a lien obtained by legal proceedings within four months prior to the filing of a petition in bankruptcy shall be "null and void" if certain other conditions are present.

The bank contends that plaintiff's lien was not "obtained" until the time when judgment was entered against the principal defendant and was therefore void as having been obtained within four months of the bankruptcy. The Court of Appeals held that the lien was obtained on the date of service of the writ of garnishment and was, therefore, unaffected by the subsequent bankruptcy proceedings.

Michigan follows the general rule that a garnishment lien attaches upon service of the writ. *Kyte v MacIvor,* 266 Mich 258; 253 NW 289 (1934). *Rickman v Rickman,* 180 Mich 224; 146 NW 609 (1914). In the case of a prejudgment garnishment, the entry of a judgment in favor of the plaintiff perfects the lien acquired upon service by removing its inchoate status and establishing the exact amount of the debt owed by the principal defendant and, thus, the amount for which the garnishee may be held liable. Should the plaintiff fail to obtain a judgment, the lien would be discharged.

In the context of a bankruptcy adjudication, Professor Collier observes:

"It seems now to be generally accepted * * * that if garnishment over four months before bankruptcy gives rise to a lien by state law, it is of no consequence that the lien may be regarded as inchoate for certain purposes. Perfection by judgment against the garnishee within the four-month period does not subject the lien

to voidability under § 67a; indeed, the inchoate lien of a garnishment need not be perfected at all in order to prevail in bankruptcy." 4 Collier on Bankruptcy (14th ed), § 67a(1), pp 131–132.

In the case at bar, the lien attached upon service of the writ more than four months prior to the filing of the bankruptcy petition and, therefore, is unaffected by the subsequent bankruptcy proceeding.

## III

In granting a rehearing this Court specifically requested that the parties address the issue of whether 1974 PA 371[5] affects this case and, if so, how.

1974 PA 371 sets forth, *inter alia,* new restrictions on prejudgment garnishments, limiting their use to situations where the principal defendant is not subject to the judicial jurisdiction of this state or cannot be served with process after a diligent effort has been made. Neither exception is involved in the case at bar. Therefore, if the act applies to the prejudgment garnishment in this case, the writ of garnishment would be void. Section 3 of the act provides: "[t]he provisions of this act shall apply to all actions pending or commenced on or after the effective date of this act". Section 4 states: "[t]his amendatory act shall take effect April 1, 1975".

On April 1, 1975, this case was before this Court on an application for leave to appeal. The question then is whether this case was "pending" within the meaning of § 3 on that date.

Black's Law Dictionary (3d ed) defines "pending"

5 MCLA 600.4011; MSA 27A.4011.

as: "[b]egun, but not yet completed; unsettled; * * * in process of settlement or adjustment".

1 Am Jur 2d, Actions, § 91, p 620, states that an action may be deemed pending after judgment has been rendered provided a motion for new trial is pending, or an appeal is being taken, or even as long as the time for appeal has not expired, although no appeal has in fact been taken.

Under the common law, an action is said to be pending until the judgment is satisfied, though only for the purpose of enforcing it or instituting proceedings provided by law to reverse or modify it. *Sweetser v Fox,* 43 Utah 40; 134 P 599 (1913). While from the foregoing it may at first appear that this case was pending at the time of the effective date of the statute, it is necessary to look at both the legislative intent as to the meaning of the expression "pending or commenced" and the purpose of the statute.

This amendatory act sets forth new restrictions on *prejudgment* garnishments. It limits prejudgment garnishments to situations where a principal defendant is not subject to the judicial jurisdiction of the state or where the principal defendant cannot be served with process after a diligent effort is made. The statute is designed to protect the due process rights of a principal defendant, not a garnishee defendant. 1974 PA 371 is a legislative response to recent Federal cases[6] invalidating prejudgment garnishment procedures which violate the due process rights of principal defendants.

At the time of entry of judgment against the principal defendant, the prejudgment dimension of such a garnishment proceeding is removed along

---

[6] *See North Georgia Finishing, Inc v Di-Chem, Inc,* 419 US 601; 95 S Ct 719; 42 L Ed 2d 751 (1975); *Mitchell v W T Grant Co,* 416 US 600; 94 S Ct 1895; 40 L Ed 2d 406 (1974); *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972).

with the potential due process problems with which the Legislature has dealt in 1974 PA 371. Moreover, when a judgment is entered against the principal defendant, the plaintiff's lien is perfected, thereby becoming a fully vested property right.

Under Michigan case law, statutes affecting property rights are presumed not to operate retrospectively. *Michigan Public Service Co v Cheboygan,* 324 Mich 309; 37 NW2d 116 (1949), *Stitt v Casterline,* 89 Mich 239; 50 NW 847 (1891), *Van Fleet v Van Fleet,* 49 Mich 610; 14 NW 566 (1883). As the Court of Appeals correctly stated in *Chesapeake & O R Co v Public Service Commission,* 5 Mich App 492, 506; 147 NW2d 469 (1967), *aff'd by an equally divided court,* 382 Mich 8; 167 NW2d 438 (1969):

"It is a fundamental principle of statutory construction that statutory amendments not be given any retroactive effect unless the legislature clearly and unequivocally indicates otherwise. The statutory amendment during the pendency of a suit has no bearing upon the rights of the parties fixed by law before its enactment." (Citations omitted.)

In addition, the "pending" language is in the context of the phrase "shall apply to all actions pending or commenced on or after the effective date of this act". The "pending or commenced" language indicates that the Legislature intended to bar only the issuance of prejudgment writs of garnishment after the effective date of the statute, not to invalidate and cause to be relitigated all judgments that had been obtained subsequent to a prejudgment garnishment.

We hold that 1974 PA 371 did not nullify the instant prejudgment garnishment where both the

writ and the judgment against the principal defendant were issued six years prior to the effective date of the statute, and were not challenged by the party the statute was designed to protect.

## IV

The final question to be resolved is the effect of *Cochrane v Westwood Wholesale Grocery Co,* 394 Mich 164; 229 NW2d 309 (1975), on the instant case.[7]

In *Cochrane* we affirmed the circuit court's order quashing the writ of garnishment challenged by the principal defendant on the basis that the writ was violative of the due process rights of the principal defendant. The issue we addressed in *Cochrane* was the constitutionality of the Michigan garnishment statute and court rule. In the instant case the principal defendant never contested the principal claim, never challenged the writ of garnishment, and never raised the constitutional questions regarding due process rights. Moreover, the prejudgment dimension of this action ended early in 1969 when the judgment, which was never appealed, was entered against the principal defendant. It is therefore necessary to consider whether the constitutional protection of due process extends to the garnishee defendant; that is, whether the bank has standing to raise the question of the constitutionality of the instant prejudgment garnishment.

[7] It should be noted at the outset that plaintiff objects to discussion of this issue because it was not raised in the application for leave to appeal or the brief in support thereof, and because this Court did not otherwise order review of this issue. GCR 1963, 853.2(1)(a). However, *Cochrane* was cited in our memorandum opinion of July 23, 1975, which peremptorily reversed the Court of Appeals, and was briefed by the parties on rehearing. We will discuss the impact of *Cochrane* in order to completely dispose of the instant litigation.

As a general rule, one party may not raise the denial of another person's constitutional rights. *United States v Raines,* 362 US 17; 80 S Ct 519; 4 L Ed 2d 524 (1960). Defendant quotes portions of Justice Brennan's dissent in *Village of Belle Terre v Boraas,* 416 US 1; 94 S Ct 1536; 39 L Ed 2d 797 (1974), where two exceptions to this general rule are discussed: first, those situations where there is evidence that the direct consequence of the denial of the constitutional rights of the other would impose substantial economic injury upon the party asserting the right; second, those instances where the litigant's interest and the other's interest intertwine and the latter's rights may not be effectively vindicated in any other manner because they are capable of evading constitutional review.

In this case the bank does not show how it qualifies under either of these exceptions. The fact that the writ of garnishment issued prior to judgment against the principal defendant was, in itself, not the direct cause of a substantial economic injury to the bank. Nor has there been any showing that the principal defendant could not have effectively asserted his own due process rights. We therefore conclude that the bank has no standing to interpose the due process rights of the principal defendant regarding the prejudgment garnishment.

Affirmed.

KAVANAGH, C. J., and WILLIAMS, COLEMAN, FITZGERALD, and LINDEMER, JJ., concurred with RYAN J.

LEVIN, J. *(concurring).* A 1974 amendment to the Revised Judicature Act[1] eliminated prejudgment

---

[1] 1974 PA 371.

garnishment to secure payment of a judgment that might be obtained. Prejudgment garnishment is now available only to secure "judicial jurisdiction" of a principal defendant.[2]

The amendment is applicable "to all actions pending or commenced on or after the effective date".[3]

I agree with the majority, for different reasons, that the present phase of the litigation, between the plaintiff judgment creditor and the garnishee defendant bank, is not an "action pending" within the meaning of that term as used in this legislation.

## I

The majority states that the amendment bars "only the issuance of prejudgment writs of garnishment after the effective date." Under the majority's construction, the amendment, in practical effect, applies to actions commenced after the effective date; had the Legislature so intended it would not have made the act applicable "to all actions pending *or* commenced" (emphasis supplied).

Prejudgment writs of garnishment, when issued at all, usually were issued at the time the action was commenced on the plaintiff's affidavit that he

---

[2] The pertinent provision of the amended statute reads:

"(3) A writ of garnishment may be issued before judgment only as provided in this subsection. Upon ex parte application showing that the person against whom the claim is asserted is not subject to the judicial jurisdiction of the state or, after diligent effort, cannot be served with process as required to subject him to the judicial jurisdiction of the state, a copy of the writ of garnishment shall be served upon the person against whom the claim is made in the same manner as provided by the rules of the supreme court for service of process in other civil actions in which personal jurisdiction over the defendant is not required. Upon rendition of judgment in the principal action, the obligation or property garnished shall be applied to the satisfaction of the judgment." MCLA 600.4011; MSA 27A.4011.

[3] 1974 PA 371, § 3.

"is justly apprehensive of the loss of his claim against the defendant unless a writ of garnishment is issued".[4]

Since relatively few plaintiffs who did not know of garnishable funds or who were not so apprehensive at the time the action was commenced, thereafter learned of such funds or became apprehensive and acted on that new information or sense of insecurity by causing a writ of garnishment to issue before obtaining a judgment, only a small proportion of the actions commenced before the effective date of the amendment in which writs of garnishment ultimately were issued are affected by the retroactivity provision as construed by the majority; the amendment applies retroactively only in the atypical case.

The apparent purpose of this legislation was to relieve principal defendants of the burden of having funds frozen during often prolonged civil litigation.

Consistent with that purpose the Legislature made this new policy applicable to "actions pending", thereby making the amendment retroactive.

The apparent purpose of retroactivity was to require the release of funds garnished[5] before the effective date. It is not consistent with that purpose to deny the benefit of retroactivity to principal defendants in the typical case where the writ of garnishment was issued and funds were garnished before the effective date.

Moreover, the majority's construction unnecessarily and, I think, unwisely exposes to action by unpaid judgment creditors a garnishee defendant who, relying on the amendment and the ordinary

---

[4] GCR 1963, 738.2(3)

[5] I accept the usage reflected in the amendment. *See* fn 2, *supra.*

meaning of the word "pending", released im-
pounded funds to the principal defendant.

In ordinary usage, the pendency of an action
does not depend on when it was commenced; an
action continues to be pending during an appeal.[6]
Lawyers advising banks and other garnishee de-
fendants holding funds impounded by a pre-effec-
tive date garnishment would have understandably
advised their clients that upon the effectiveness of
the amendment they were obliged to release the
funds to the principal defendant.

## II

The retroactivity provision of the amendatory
act is concerned with garnishment as it affects
principal defendants, and the extent of the retro-
activity can properly be limited on that basis.

It is beyond the remedial purpose of the retroac-
tivity and the meaning of the term "actions pend-
ing" as used in this legislation for the amendment
to be effective in a situation that does not tend to
benefit the principal defendant or a person claim-
ing in respect to him.[7]

In this case the funds had been turned over to
the principal defendant's receiver before the enact-
ment of the amendment. The funds were not re-

[6] *Snyder v Buck,* 340 US 15, 20; 71 S Ct 93; 95 L Ed 15 (1950);
*Matter of Natanson,* 276 App Div 745, 749; 98 NYS2d 155, 159 (1950);
*Nicastro v United States,* 206 F2d 89, 92 (CA 10, 1953); *Butcher v
Brouwer,* 120 P2d 506, 507 (Cal App, 1941); *United States v Claus,* 5
FRD 278 (ED NY, 1946). *See, generally,* 1 Am Jur 2d, Actions, § 91, p
620.

[7] The majority states that "the writ and the judgment against the
principal defendant * * * were not challenged by the party the
statute was designed to protect". I cannot join in a "standing"
analysis. Although the amendment is designed to protect principal
defendants, not garnishee defendants, a garnishee defendant who,
following the amendment, in apparent reliance on the retroactivity
provision, released garnished funds to a principal defendant has
standing to assert the protection of the amendment.

leased by the bank to the principal defendant in reliance on the legislative directive. Retroactivity in this case would not tend to benefit the principal defendant or a person claiming in respect to him. On that basis I concur in the majority's disposition of this appeal.